Stephen Match for the appellants. Since the first copyright infringement act of 1790, copyright has been so important in American law that the creation of a new copy has always sufficed without more to ground Article III jurisdiction. Fast forward 200 years and Congress passes the Digital Millennium Copyright Act to expand copyright owners' rights in the digital age and in particular to protect against the removal of CMI, copyright management information, when doing so would conceal or abet an infringement. This appeal concerns when plaintiffs have standing to bring CMI removal claims. The District Court, of course, found no standing in contrast to the other judges, including Judge Rakoff and Judge Stein, who reached the opposite conclusion. We've offered three theories of standing. I'd like to start with the one that I think is the simplest way to resolve this case, which is really a straightforward application of transunion to the facts of this case and the process by which OpenAI removed the copyright management information. So the successful transunion plaintiffs invoked a historical injury, reputational harm, and showed how that historical injury resulted from the violation of the statute there, which was the maintenance of a false credit file. We've done the same thing. We've invoked what I think everybody agrees is a valid historical injury, the making of a new copy, in this case without copyright management information, and we've shown how that results from the removal of our copyright management information and the violation of the DMCA. Now, OpenAI, in its brief, I don't think contests the validity of that historical injury, the making of a new copy under transunion. It says that we haven't alleged that it's traceable to the statutory violation and the removal of CMI, but I think that rests on a misreading of the operative allegations in the proposed First Amendment complaint, and I would point the court to paragraphs 43, 46, 48, and 51. So OpenAI says that we allege the making of one copy, which is the copy that it made when it downloaded our articles with CMI from the internet, but we also allege a second copy, which is a copy that OpenAI made in the process of removing our copyright management information. And your view is that that additional copy, as you're describing it, is sufficient to establish a copyright-like injury? It is, because the making of a new copy is a historical injury. This is a claim that could have been brought, or the injury is one that was cognizable from the first copyright act going forward, because it involves the making of a new copy. In this case, the copy didn't have copyright management information on it, but it's, you know, it's the violation of a property right is the making of a new copy. So I think that is sufficient for Article III standing. You said the first copy you referred to is a new copy, and you said that results from the removal of the CMI? So the first copy does not result from the removal of the CMI. I didn't think so, yeah. It doesn't. The first copy is just OpenAI downloads a web page from the internet, and that web page has both the news article and the associated CMI. So that doesn't result from the removal of CMI. What does result from the removal of the CMI is the second copy that OpenAI makes when it applies the text extractor algorithms, because the text extractor algorithms both remove CMI and make a new copy. And indeed, the whole point of making the second copy is to have a version of the news article that OpenAI wants in the format that it wants to train on. And as we allege, it doesn't want to train on the copyright management information. So that's the whole point of the process. The point is that the process itself, I take it your point is that the process itself of the removal entails the making of a copy. That is correct. Right. And so therefore, the process itself then reflects, in your view, a violation or a violation of an inherent right of copyright, i.e. not to have the copyrighted material reproduced without your permission. Correct. Which is different from the claim in the original complaint that Judge McMahon found fault with. That's right. This is a different theory of standing. So in the first version of the complaint, we really only presented what in our appellate brief we call the sort of per se theory of standing, which depends on an analogy between CMI removal and infringement. But the second... But closely, the kind of the role that the removal of CMI might have in a causal chain resulting in a copyright violation. Yeah, that was the sort of allegations that were added to the second complaint, which enabled us to invoke this theory of standing, which was not invoked in the first. The first version of the complaint was similar to the one that Judge Rakoff upheld. He sort of adopted this per se analogy between CMI removal and copyright infringement. This court, of course, could do the same. It's got the required allegations there. He didn't consider this sort of more fact-specific, narrower holding that was made possible by the added allegations to the amended complaint. Okay. From the standpoint of the amended complaint or amending the complaint, Judge McMahon denied your request to amend the complaint. The information that shows up at the paragraphs that you've mentioned, which are found at JA 110 to 112 or so, is it your position that you didn't discover the impact of the two programs that were used, what is it, Dragnet and Newspaper, until after you'd had some discovery that occurred, or is that it? I don't think our position is that we couldn't discover that information. Judge McMahon didn't deny amendment on the grounds that we couldn't have made these allegations earlier. She denied it on the grounds that the amendments would have been futile because they wouldn't have established standing. I'm not sure our claim is that we couldn't have discovered that information. They weren't necessary in our initial view, which is consistent with the decision of Judge Rakoff, who didn't rely on similar allegations in his case. Well, it just changes the standing calculus, doesn't it? Because it puts the copyright injury directly within the process of the CMI removal. It absolutely does change the calculus because what these allegations add that the prior ones didn't have was, as you pointed out, the literal making of a new copy in the process of removing the CMI. That's the sort of main contribution of those allegations. I'm sorry. Go ahead, Judge Jacobs. I'm sorry. No, continue. No, that's fine. Go ahead. What was the purpose of the law that forbid removing CMI? I think there was a few purposes. What right was it protecting? Well, it was protecting against the proliferation of unattributed, infringing articles that could be made and sort of disseminated throughout the internet in a way that would interfere with copyright owners. Is that what's happening now? So we haven't alleged an actual dissemination of our articles, if that's the question that you're asking, because at the time that we made the amendments to the complaint, it had sort of been stopped by changes to OpenAI's processes. They kind of stopped these regurgitations. I'm sorry. What happened? I mean, I don't know why you can't just go on chat today and ask it what your article said and find out if they're infringing. So the reason why we can't do that is because after we filed the complaint in this case and after OpenAI was sued by various plaintiffs for copyright infringement, we've alleged and I think this will be borne out in discovery, that they made changes today that didn't exist at the time that they removed the CMI, but that do exist now that prevent the regurgitation of our articles today, not at the time they removed the CMI, which was the time relevant to the allegations in the complaint. Are they still removing CMI before teaching the machine? I don't know if they're still removing CMI. I mean, I have some information about things that they have sort of done that is, frankly, it's covered by a protective order. So I'm not exact that I learned in my capacity as counsel for other cases. So I don't want to violate that. I don't know if literally today they are still doing this because I haven't. You know, the more up-to-date models aren't an issue in the... So your complaint is largely retrospective? Damages, unjust enrichment, stuff like that? Yes, the complaint as it stands today is seeking damages, correct. Thank you. Thank you. Okay. All right, thank you. We have your argument. You'll have some rebuttal time. Thank you. Yes, Mr. McLeod. Good morning, Your Honors, and may it please the Court. Charles McLeod of Williams & Connolly on behalf of OpenAI. I'd like to start by addressing my colleague's arguments regarding the supposed second set of copies. I think there are two problems with that theory. The first is that theory is not adequately alleged in the amended complaint. And I would direct the Court's attention in particular to the allegations that appear at JA 109 and JA 110. So on JA 109 in paragraphs 42 through 45, plaintiffs have some general allegations about how they understand the dragnet newspaper algorithms to work. There is no allegation in this section that OpenAI, in fact, made second copies. They simply allege that it is possible using dragnet and newspaper to make second copies. Well, have they had discovery of your people with regard to the use of those programs? They have not, Your Honor. Well, then the standard's rather forgiving, isn't it, with regard to their pleading? Well, as the district court said, Your Honor, there were a number of problems with their request for jurisdictional discovery. The main one was that it was entirely speculative whether they would come up with evidence of regurgitations or disseminations of their own. Let me ask you a question, counsel. Is a copy made of the work at the time that this was going on, was a copy made of the work as part of the process to remove CMI? Yes, Your Honor. They allege in paragraph 62. Oh, no. I'm asking you, was a copy of the work made as part of the process of removing the CMI? The allegation in the complaint, Your Honor, is that we did not make a copy. I didn't ask you about the allegations in the complaint. I asked you, did that occur? I don't know the technical details. You don't know the answer to that? I don't, Your Honor. I would have thought you would, so that you could stand up there and say that there's no proof whatsoever, and I know it to be a fact. In fact, you have like a half a page with regard to this second theory, which has drawn at least the attention of several of us. What, Your Honor, that's because... Mike, excuse me. You're here saying that prediscovery, that these allegations which imply and refer to the process of removing the CMI entails copying, constitutes part of the claim that they're making? Let me ask you a more basic question. Does copying a work constitute a violation of the copyright? It can in certain circumstances, and they do allege that we made copies that violate their copyrights. That's in paragraph 62, but they are focused on the initial act of downloading the articles. That is the actual allegation of copyright infringement that is made in this complaint. When they talk in the complaint about... If I disagree with you, and I see that it reasonably pleads that copying is part of the process, would you agree with me that they've pled a copyright injury? Respectfully, I would not, Your Honor. I think they would still have a traceability problem in that circumstance. You know what I hear when you say respectfully. That's okay, though. Well, I did mean it with all respect, Your Honor, but I do think... And I agree with you. That's fine. I'm just giving you a hard time. Go ahead. I do think that they still have a problem with respect to causation. As I understand the allegation... Cause it? Yes. Copying alone isn't enough? No, Your Honor. So the initial copying, the supposed downloading of the articles is not enough for the reasons that we explained at the beginning of our brief. They have not alleged that there was actual copyright infringement because they do not have enforceable copyrights to begin with. First of all, second of all... And that's one thing. Second of all, the allegation that we download the articles has a causation problem because they're saying we downloaded the articles and then we later removed the CMI. And so they are not establishing that the CMI removal led to the copying. I think that's why they've pivoted to this theory of second copies where they say in the process we removed CMI and also made copies. But I think they still have a causation problem with respect to those allegations as well. For this reason, they are saying that in the course of copying, there was CMI removed. They're not saying that the CMI removal caused any later copies. And I think... Well, no, they're saying that to accomplish the CMI removal, copies had to be made. I think that's what I take their complaint to be saying. I understand the allegation to be that they did that themselves in the course of their experiments with their data analysts. So this is on JA-110. They haven't deposed your people yet. This is a theory. The question is whether the theory fits within the legal context. And the district court went off on the fact of the transunion about the dissemination. But copyright, the age-old copyright, is reproduction itself violates the copyright. That's part of what the right is. I agree with that, Your Honor. I guess what I'm saying is the only reproduction that is clearly alleged in this complaint is the reproduction that occurred allegedly when we downloaded the articles initially. And that's why in paragraph 62, that is what they allege is copyright infringement. They do not have a separate argument or separate allegation that we infringe their copyright by making later copies. They do talk about later copies. But to be clear, those are copies that they themselves make. This is in paragraph 48 of the immediate complaint. They say that in experimenting with their data scientists, they produced copies in order to compare the versions of the articles they had before they applied the algorithms and after they applied the algorithms. And there is no clear allegation, at least as I read the complaint, that OpenAI did anything similar. So they are talking about experimentation. They did. This is not what Judge McMahon grabbed ahold of and decided with regard to a denial of the motion to amend, right? That is right. So her focus of the motion to amend was she acknowledged that they had added additional technical details. She did not specifically address this second copies theory. I think in large part because it is not adequately alleged for all the reasons I have talked about. So she was aware that they added technical details about the process. But those details, as I've said, are really focused on things that they did to try to prove up their theory based on the likelihood of dissemination. But as they acknowledged and as my friend acknowledged today, they do not have evidence that any sort of dissemination happened. And so I think... Well, you know, I know you are holding hard to and your brief holds hard to the lack of their evidence. Really, with all due respect to you, it does not impress me much. You have not had much discovery. I mean, you are talking about facts behind a screen. Who knows what discovery is going to disclose on this? The question is they attempted to replicate this with regard to their data sciences. And you say that 48 comes up short. You know, you'll forgive me. I reflect my age that it's hard for me sometimes to appreciate or understand all of this. But isn't that better left to someone to take a look at? I mean, back at the district court level to see whether it measures that. Because you're arguing something here that wasn't really... The district court didn't give us the benefit of their views. So, Your Honor, I guess I would step back a bit and say normally the way litigation works is you don't file a complaint and then request extensive discovery to figure out whether you've been injured or not. You know if you've been harmed or not. And in this case, if they had evidence of a clear harm, such as dissemination and some other... That's the interesting thing. Think about copyright. People who hold copyrights don't always know if the works have been reproduced. And yet it's quite clear that reproduction alone is a violation of the copyright. It's an inherent part of copyright. And that's why when you go to Chad GBT and you ask how is a copyright infringed, the first thing it says is reproducing. And Your Honor, that's why I think it's critical to focus on the distinction here between the DMCA claim they're making and a potential copyright claim. As I said before, they do not have enforceable copyrights. So they have not... If the removal of the DMC also had to involve copying, then the removal of the DMC itself then had a role in the violation of the copyright. If it had to involve or did involve the making of copies, wouldn't that inherently have an injury to it? Well, Your Honor, I think I go back to my prior response. Because of a copyright nature, I mean, since it's different from transunion in the sense that copyright recognizes that reproduction alone is itself an injury, an inherent part of copyright. And Your Honor, I agree with you as to copyright. I do not agree with you as to the DMCA. As we explained in our brief, the DMCA does not create the sort of per se property right that is at issue in the copyright context. Let me ask you one last thing, because I'm really giving you a hard time. I find this case fascinating, so I apologize for doing this. But presume that I want to strip off the DMCI, and what I have to do is I copy the article with the DMCI on it. And then I apply a program to it that removes the DMCI and takes the copy that it was already made and then recopies it without the DMCI. But that's the way it works. Haven't I violated the Copyright Act twice, both the copy that was made with the DMCI and then the copy that is produced at the other end of the process without the DMCI on it? So in that circumstance, Your Honor, I would agree that there may be a copyright violation, but I would still reject the argument that there's causation from the DMCA violation. I don't think in that scenario the removal of CMI has caused the copying. It's the copying that has caused the removal of CMI. And so I think they would still have a traceability problem, even under that theory. And that is at most what's alleged in the complaint. But again, to go back to my earlier response, I really think that the only allegation of copyright infringement that's clear in the complaint is in paragraph 62, which is talking about the initial downloading. When you're saying that the making of the copy is not traceable to the violation, if any, of the statute on CMI, suppose it isn't. Suppose it is not traceable. You just make two copies, one in order to strip from it the CMI, the other, the one without the CMI. I think you were just granting to Judge Wesley that that alone could be a copyright infringement. And then you don't need the CMI, that's just the reason that they did it. It's not traceable to it. It's just the premise for doing it. So that hits on an important distinction between this case and some of the other cases that are in MDL, for example. In those other cases, plaintiffs have alleged both DMCA claims and copyright claims. What's unusual about this case is plaintiffs do not have enforceable copyrights, and so they can't bring the sort of copyright claim that Your Honor is alluding to. They're forced to bring the DMCA claim. And as we explained, I'm sorry, Your Honor. They're unregistered, right? And they're unregistered, exactly. And so they're focused on the DMCA. And as we explained in our brief, the DMCA, although it is a prophylactic statute like the thicker statute at issue in TransUnion, does not create the sort of property rights that are traditionally the basis for the copyright cause of action. We think under TransUnion, you have to look to what is the harm that gets you into court. In copyright, the harm is a violation of your property rights. In the DMCA, you have no property right in CMI integrity. If I tear the cover off of my copy of Harry Potter, I have not infringed any property rights of J.K. Rowling. Now, if that leads to eventual copyright infringement, there may be a claim both under the DMCA and under the copyright statutes. And again, those are the other cases that are currently being litigated in the MDL. But this one is different because they don't have the enforceable copyrights. Thank you. All right. Thank you very much. Thank you. Good morning again. Four quick points. First, the Harry Potter example is inapt. That person hasn't violated the DMCA because they don't have the required center, as we point out in our brief. Second, on registration, the Article III question is whether we've suffered a harm. We could register our copyrights tomorrow. I don't think anybody would say that that affects whether we have been harmed. The harm is the making of the new copy and the violation of the property right that the making of the new copy entails. You're entitled to actual damages, right? Even without the registration, right? Under the DMCA, we are. Yeah. Okay. Oh, I'm sorry. Under, right. We, under, if we brought it up, we would be entitled to actual damages. Correct. Under what? If we were to register our works tomorrow, we would be entitled to bring a copyright infringement claim and collect actual damages. Okay. But you haven't. We have not. And my submission here today is that that doesn't impact the harm analysis. The question under TransUnion is not, is there a sort of one-to-one correspondence between the elements of the injury today and the elements of some historical injury? The question is, has the plaintiff suffered the same kind of harm? And my submission is that if we were to register our copyrights tomorrow, our harm would be the same as it is today. It would be the making of a new copy and the violation of that right. Judge Wesley, as I think you were exploring, the reason why we sort of, we couldn't make some allegations that we would make after discovery is because we haven't had discovery. What we did is we alleged how these text extractor algorithms work. We alleged that they are designed to both remove CMI and make new copies. And we confirmed by hiring a data scientist to apply those algorithms on our works that that's what they did. To be clear, we do allege that this is what OpenAI in fact did. And the only reason we haven't pointed to specific, you know, we haven't cited specific copies made by them is because we haven't had the discovery that would enable us to do that. And have you, does the complaint in your view fairly allege that that is part of what you're arguing the harm is? I think your friend on the other side was suggesting that while you are explaining the process as you believe it to be, that your claim was based on the idea that the injury was from the initial complaint, the first copy, the download. Not that you were arguing, you were not arguing according to them that this second copy produced from the extraction was part of what you were claiming the harm is. That you're explaining the process, but that's not what the claim was about. I don't know if that was clear, but. No, yeah, I understand your question. So paragraph 62, which my colleague pointed to, was not directed at the standing issue. So that paragraph alleged is defendant's actions in downloading the articles without permission infringes copyright. But that is really relevant to the second see enter element. That's what that paragraph was directed to, which requires that there be an infringement that is concealed or abetted. And part of our allegations on second see enter element is that one of the infringements that was concealed or abetted was the infringement that resulted from downloading. I think if you read the paragraphs I cited earlier, 43, 46, 48, and 51, we have alleged that the actual operation of these text extractor algorithms made further copies. And I think that's all we need to identify in the complaint for standing because the making of a further copy is an article 3 harm. You seem to be saying that the, I probably have this wrong, but I think you said that the removal of the CMI is a concealment of the making of the copy. Can you specify your? I don't know. I thought you were saying that that is part of a program of, it's illegal because it's concealing the violation of the copyright. It is. I mean, so that's, that goes to the second see enter element of the DMCA, which of course is the. Concealing it from whom? So the. They're doing it themselves. They are. So the allegations that we make in the complaint, and again, I would stress that this is a merits on, but, but the way the concealment works in the following way. So large language models, as we allege, have a propensity to so-called regurgitate their training data. So that means that it would be possible, at least at the time that the CMI was removed and shortly thereafter for chat GBT to reproduce part of our article in response to a user prompt. But is it alleged that they have? It isn't. So it is not, we haven't identified any specific instances of dissemination, but the DMCA doesn't require there to be an actual infringement that has been concealed at the ninth circuits decision in Stevens versus core logic. It would facilitate that. It would. Correct. If one didn't. Right. So exactly. Because the, the, the verbs in the second see enter requirement are all future looking. So they need to have actual or constructive knowledge that there would be a likely concealment or facilitation of an infringement, but to satisfy the DMCA, we don't actually need to show that one has been concealed or facilitated. Because if you think about it, that's, it's a very difficult thing to show because the whole premise behind the statute or one of the premises behind the statute is that the removal of CMI makes these things really hard to find. But you know what you're looking for. We do. So if you know what you're looking for, you only have to look for it and see if chat produces the text that, that, um, that you claim they were concealing, um, that you claim they copied and removed the CMI to conceal. And the way that we would do that is to state, is to take discovery of the chat logs that OpenAI has with its users. The chat's all over the place. I mean, you can just, why don't you just ask it? I know I asked you this before, but I, I, I, the more you explain it, the more I don't understand. So like tomorrow or, you know, today we could, we could have a conversation with ChatGPT and we could say, produce a raw story article. And ChatGPT will say, I can't do that because it's copyrighted. But at the times relevant to the complaint, because I, as I answered to you earlier, this is a retrospective complaint here. Other users could well have done that. Or other users could have asked about a topic that we've written about and ChatGPT could have responded with quote, with, you know, plagiarism, plagiarisms of our articles about attributing information. We can't find those by just asking ChatGPT. The only way that we can find that is by examining the logs that OpenAI has of conversations between its users and, and ChatGPT. And that is the discovery that other plaintiffs in the MDL have been getting. OpenAI is going to produce another 88 million of these logs later this week. They've already produced 20 million. The other plaintiffs in the MDL are, are examining those. That's how we would find that information. Because today we can't go do it because they've disabled it. It wasn't disabled earlier, which is why we can't do it today, but it likely would have happened at the relevant time. Does that answer your question? I think so. Okay. Okay. I think we have your argument. Thank you both. We will reserve decision. Thank you very much. Thank you both.